1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LAILA AZIMI,

        Plaintiff,

  v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

        Defendant.

_____/

No. C 11-01456 WHA

**ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

**INTRODUCTION**

      In this social security action, plaintiff appeals the denial of supplemental security income

benefits.  For the reasons set forth below, plaintiff's motion for summary judgment is **DENIED** and

defendant's motion for summary judgment is **GRANTED**.

**STATEMENT**

      Plaintiff filed an application for supplemental security income benefits in December 2007,

alleging a disability onset date of July 1, 2001 (AR 95).  The application was denied initially and

on reconsideration (AR 61–70).  Plaintiff requested a hearing before an Administrative Law

Judge, and one was held in October 2009.  At the hearing, plaintiff was represented by counsel.

Plaintiff testified on her own behalf, and a vocational expert also testified (AR 27–58).  In a

January 2010 decision, the ALJ denied the claim for supplemental security income (AR 10–19).

Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied, making

1    the ALJ's decision the final decision of the Commissioner (AR 1–4).  Plaintiff then filed this

2    action for judicial review of the ALJ's decision.

3          The ALJ found that plaintiff had "the following severe impairments:  carpal tunnel

4    syndrome, right greater than left, and cervical degenerative disc disease with radiculopathy."

5    Those severe impairments, however, did not meet or exceed any medically listed disability

6    (AR 12–13).  The ALJ then assessed plaintiff's residual functioning capacity in light of her severe

7    impairments.  Based on plaintiff's residual functional capacity, the ALJ found that she was unable

8    to perform past relevant work but that "there are jobs that exist in significant numbers in the

9    national economy that [she] can perform" (AR 13–18).  The ALJ therefore concluded that

10   plaintiff was not "under a disability, as defined in the Social Security Act" and was not entitled to

11   supplemental security income (AR. 18–19).

12         Plaintiff disagrees with the ALJ's finding that there were jobs in significant numbers in

13   the national economy that she could perform.  Specifically, plaintiff argues that this finding was

14   based on vocational expert testimony "in response to a hypothetical question which did not

15   contain all [plaintiff's] limitations" (Pl. Br. 5).  Plaintiff moves for summary judgment reversing

16   the ALJ's decision and remanding the action for payment of benefits or, alternatively, further

17   administrative proceedings (*id.* at 6).  Defendant opposes plaintiff's motion and moves for

18   summary judgment affirming the ALJ's decision (Def. Br. 8).  Plaintiff's combined opposition to

19   defendant's motion and reply in support of her own motion was due on September 12, 2011.

20   None was filed.  Plaintiff was ordered to show cause by October 7, 2011, why the matter should

21   not be deemed submitted for decision (Dkt. No. 13).  The deadline passed, and no filing was

22   made.  Accordingly, the matter is deemed submitted.

23                                        **ANALYSIS**

24         A decision denying supplemental security income shall be upheld on appeal if it is

25   supported by substantial evidence and free of legal error.  Substantial evidence is "more than a

26   scintilla" but "less than a preponderance" and is "such relevant evidence as a reasonable mind

27   might accept as adequate to support a conclusion."  *Smolen v. Chater*, 80 F.3d 1273, 1279

28   (9th Cir. 1996).  The court must consider the entire administrative record, including evidence that

United States District Court
For the Northern District of California

2

does not lend support to the ALJ's conclusion. Where evidence in the record is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld. *Andrews v. Shalala*, 53 F.3d. 1035, 1039 (9th Cir. 1995).

Plaintiff challenges the ALJ's decision in only one respect. Plaintiff argues that the ALJ's finding that jobs existed for her was based on the vocational expert's response to a hypothetical question that did not include all of plaintiff's limitations. Plaintiff recounts that two hypothetical questions were posed to the vocational expert at the hearing. This is true. Plaintiff further recounts that the expert testified that the first set of hypothetical limitations matched no jobs, whereas the second set of hypothetical limitations matched a significant number of jobs. This is also true. Plaintiff then asserts that the first hypothetical described her actual limitations whereas the second hypothetical did not, and that the ALJ's conclusion was based on the vocational expert's response to the second hypothetical (Pl. Br. 5–6). Here, plaintiff misconstrues the record.

In his written order, the ALJ described plaintiff's residual functional capacity as follows (AR 13) (emphasis added):

> [T]he claimant has the residual functional capacity to perform *a range of light work* as defined in 20 CFR 416.967(b), *except that the dominant right upper extremity is limited to:* lifting/carrying a maximum of 10 pounds, rare overhead reaching and rare full extension, no repetitive or forceful pushing/pulling, and no forceful gripping/handling; additionally the claimant's English ability is limited.

Thus, the ALJ found that plaintiff was able "to perform a range of light work as defined in 20 CFR 416.967(b)," with additional limitations that applied only to her right arm. Light work was defined in 20 C.F.R. 416.967(b) as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

The ALJ therefore found that plaintiff's *left arm* was capable of lifting twenty pounds occasionally and ten pounds frequently, while her *right arm* could lift or carry a maximum of only ten pounds, within other range and repetition restrictions.

3

The first hypothetical question the ALJ posed to the vocational expert assumed "someone of claimant's age, education, and experience, including limited English ability, with a dominant right upper extremity, rare overhead reaching, lifting and carrying at ten pounds maximum at all times, rare full extension reaching — by that I mean the arm fully extended from the body — no repetitive push/pul, no forceful push/pull, and no forceful gripping or handling" (AR 48–49). This hypothetical question was *more restrictive* than plaintiff's residual functional capacity, because it applied her specific right-arm limitations to the hypothetical person generally.  The vocational expert testified that such a person would qualify for "no jobs" (AR 53).

The ALJ then modified the hypothetical question.  He asked the vocational expert to assume that "the lifting and carrying were at the full light level" of "ten pounds frequently, 20 pounds . . . occasionally" (AR 53–54).  This second hypothetical question was *less restrictive* than plaintiff's residual functional capacity, because only her left arm could perform the full level of light work.  The vocational expert testified that such a person would qualify for a number of jobs.  He identified several such jobs and the rates at which they were available in the national economy (AR 54–55).

Finally, the ALJ asked whether the availability of those jobs to plaintiff "would be eroded" because of the additional limitations to plaintiff's use of her right upper extremity, *i.e.*, her right arm.  The vocational expert testified that the numbers he provided would be eroded by "[a]bout 40 percent" (AR 55).  Thus, the vocational expert indicated that plaintiff would be qualified for the types of jobs he identified in response to the second hypothetical question, but that the rates at which those jobs would be available to her would be about 40% less than the rates he quoted.

The ALJ's written order repeated this information and acknowledged that the job-availability rates provided by the vocational expert had to be "eroded by about 40% because of the upper extremity restrictions."  The ALJ nonetheless found, "[b]ased on the testimony of the vocational expert," that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" (AR 18).  That finding was based on

testimony by the vocational expert that addressed plaintiff's precise residual functional capacity. It was supported by substantial evidence and free of legal error.

Plaintiff does not dispute any other aspect of the ALJ's decision.  Because plaintiff has failed to show that the ALJ's decision lacked substantial evidentiary support or contained legal error, plaintiff's motion for summary judgment is **DENIED** and defendant's motion for summary judgment is **GRANTED**.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED** and defendant's motion for summary judgment is **GRANTED**.  Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated:  October 20, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

5